**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERJONA VASQUEZ, MANISHA KRISHNAN, EDUARDO VASQUEZ, DENISE LAU, and ANGELA MAYO, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| | ) | 13-cv- |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| TARGET CORPORATION, and TD BANK USA, N.A. | ) ) ) | |
| | ) | TRIAL BY JURY DEMANDED |
| Defendants. | ) | |

**COMPLAINT- CLASS ACTION**

**INTRODUCTION**

1. Plaintiffs Erjona Vasquez, Manisha Krishnan, Eduardo Vasquez, Denise Lau, and Angela Mayo, ("Plaintiffs"), bring this class action against Target Corporation on behalf of themselves and others similarly situated resulting from Target Corporation's ("Target") acts and omissions that caused approximately forty million (40,000,000) cardholders' payment card information to be compromised and seek monetary relief and injunctive relief requiring Target and TD Bank USA, N.A., ("TD Bank") the issuer of the REDcard, Target's branded credit card, to immediately implement security measures, including that the REDcard contains a Chip and PIN instead of the inherently vulnerable magnetic strip.

2. Avivah Litan, a security analyst with Gartner Research, says given all the security, she believes the breach at Target may have been an inside job. http://abcnews.go.com/Business/wireStory/answers-questions-target-data-breach-21277703

3. "Credit and debit card accounts stolen in (the Target breach) ... have been

flooding underground black markets in recent weeks, selling in batches of one million cards and going for anywhere from $20 to more than $100 per card[.]"
http://www.usatoday.com/story/money/business/2013/12/22/target-breach-suits-and-investigations/4167977/

4.      Data security is an important issue affecting the payment card system.  In order to protect the integrity of customer and issuing institution non-public information and to minimize fraud losses, the Card operating Regulations have, for many years, included comprehensive rules and procedures that govern payment card security including security related to payment card data.

JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) as the amount in controversy exceeds $5,000,000, exclusive of interest and costs, at lease one Plaintiff has a citizen diverse from the Defendants and there are more than 100 class members.  This Court has supplemental jurisdiction over Plaintiffs; and the Class Members' state law claims under 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction of Target and venue is proper as Target does business at multiple locations within the district including a store that Plaintiffs Erjona Vasquez, Krishman and Eduardo Vasquez conducted their payment card transaction with Target at.

PARTIES

7.      Plaintiff Erjona Vasquez, is a natural person residing in, domiciled in, and a citizen of the State of Illinois.

8.      Plaintiff Erojna Vasquez used her Chase debit card at Target on November 28, 2013, and her Target debit REDCard on December 9, 2013.

2

9.     As a direct result of Target's acts and/or omissions, Plaintiff Vasquez expended the time and travel expenses going in person to obtain a new Chase debit card to protect her card from future unauthorized charges.

10.     Plaintiff Erojna Vasquez has not been able to reach anyone at Target's REDcard call center to cancel the REDCard debit card which is linked to her bank account.

11.     Plaintiff Manisha Krishnan, is a natural person residing in, domiciled in, and a citizen of the State of Illinois.

12.     Plaintiff Krishnan received notification from her bank that she used her Chase debit card at Target between November 27 to December 15, 2013, notifying her in part that as a direct result of the Target's data breach the amount of daily purchases and cash available to withdraw was reduced to $300 and $100 respectively.  She was also informed that she would not be able to access her account via an ATM outside of the United States.

13.     Plaintiff Eduardo Vasquez a natural person residing in, domiciled in, and a citizen of the State of Illinois.

14.     Plaintiff Eduardo Vasquez used his Chase debit card at Target on December 12, 2013.

15.     Chase limited Plaintiff Eduardo Vasquez's ability to fully use his Chase debit card as a result of his card being compromised by the data breach at Target.

16.     Plaintiff Denise Lau is a natural person residing in, domiciled in, and a citizen of the State of Minnesota.

17.     Plaintiff Lau used her Target REDcard Visa at Target during the November 27 to December 15, 2013, time period.

18.     Plaintiff Mayo is a natural person residing in, domiciled in, and a citizen of the

State of Arizona.

19.     Plaintiff Mayo used her Chase and PNC debit cards at Target during the November 27 to December 15, 2013, time period.

20.     Plaintiff Mayo was traveling out of state for the holidays and was not able to access the funds she had in her Chase account due to restrictions on her account placed as a direct result of the data breach at Target.

21.     On information and belief, each Plaintiff's payment card information has been compromised.

22.     Defendant Target Corporation is incorporated under the laws of Minnesota with its corporate headquarters located at 1000 Nicollet Mall, Minneapolis, Minnesota 55403.  For service of process in Illinois Target's registered agent and its address is CT Corporation, 208 S. LaSalle, Ste. 804, Chicago, IL, 60604.

23.     Target is the third-largest U.S. retailer.  As of May 1, 2010, Target operated store locations in 49 states and the District of Columbia, comprised of 1,489 Target general merchandise stores and 251 SuperTarget stores.  On information and belief, the data breach complained of here occurred at nearly all of Target's 1,797 stores in the United States.

24.     TD Bank USA, N.A., is a subsidiary of Toronto-Dominion Bank (a publically traded company on the New York Stock Exchange under the symbol TD), who owns 100% of . TD Bank USA, N.A.   TD Bank USA, N.A., does not maintain a traditional retail branch network; its products and services are primarily delivered via the Internet, telephone and mail. TD Bank has offices at One Portland Square, Portland ME 04101.

**FACTS**

25.     Target's Privacy Policy states in part:

We maintain administrative, technical and physical safeguards to protect your personal information. When we collect or transmit sensitive information such as a credit or debit card number, we use industry standard methods to protect that information. However, no e-commerce solution, website, database or system is completely secure or 'hacker proof.' **You are also responsible for taking reasonable steps to protect your personal information against unauthorized disclosure or misuse**.

http://www.target.com/spot/privacy-policy (emphasis added).

26.     Prior to November 27, 2013, companies such as VISA and MasterCard began informing retailers of the need to comply with the Payment Card Industry Data Security Standard ("PCI DSS").

27.     The PCI DSS is to be complied with by all merchants, who like Target, accepts Visa and MasterCards.

28.     The PCI DSS requires a merchant to:

      a.  Assess-identify cardholder data, take inventory of IT assets and business processes for payment card processing, and analyze them for vulnerabilities that could expose cardholder data.

      b.  Remediate-fix vulnerabilities and do not store cardholder data unless needed.

      c.  Report-compile and submit required remediation validation records (if applicable) and submit compliance reports to acquiring bank and card brands which a merchant does business with.

29.     Visa also has additional security requirements known as the Cardholder Information Security Program.

30.     MasterCard also has additional security requirements known as the MasterCard Site Data Protection.

31.     On information and belief, due to Target's size, it has directly contracted with one or more of the card issuers, American Express, Visa, MasterCard, or Discover, and its contractual obligations include maintaining cardholder data security.

32.     On information and belief, it is more than likely that Target will be fined by MasterCard, Visa and American Express for its conduct complained of here for violations of those companies' cardholder security policies.

33.     Due to Target's size it is considered by the payment card system as a Level 1 merchant and is subjected to the strictest set of rules and procedures related to data security.

34.     As of January 24, 2011, Target retained customers' payment cards' account numbers for 60 or 80 months.

35.     As of January 24, 2011, Target retained customers' payment cards' expiration dates in an de-encrypted format for 60 or 80 months.

36.     On information and belief, from previous data breaches that occurred at TJX Cos (TJ Maxx, and Marshalls) (42 million payment cards were compromised), BJ Wholesalers and DSW, Barnes & Noble, Target is aware that large retailers can be the target of data security breaches in which thieves attempt to gain access to cardholder data by various methods, including but not limited to the compromise of the WEP wireless encryption.

37.     In 2012 Experian, one of the three major credit reporting agencies, blogged "cyber thieves can be insidious, especially during a busy holiday season" and provided a "few simple data breach protection practices." http://www.experian.com/blogs/data-breach/2012/11/20/cyber-thieves-target-retailers-during-the-shop-til-you-drop-season/

38.     Target is well aware of all of its requirements to protect cardholder data as demonstrated by their Annual Report 10-K/A filed on March 18, 2010, that states:

If we fail to protect the security of personal information about our guests, we could be subject to costly government enforcement actions or private litigation and our reputation could suffer.

The nature of our business involves the receipt and storage of personal information about our guests. If we experience a data security breach, we could be exposed to government enforcement actions and private litigation. In addition, our guests could lose confidence in our ability to protect their personal information, which could cause them to discontinue usage of our credit card products, decline to use our pharmacy services, or stop shopping at our stores altogether. Such events could lead to lost future sales and adversely affect our results of operations.

39.     On December 18, 2013, blogger krebsonsecurity.com first reported the story that cardholder's personal data was breached at Target.

40.     On December 18, 2013, The Chicago Tribune ran a story on that millions of persons credit and debit card's information had been compromised.

41.     Target has determined that approximately 40 million cardholders' payment card information has been compromised over a time period from November 27, 2013 to December 15, 2013.

42.     On information and belief, Target did not detect the theft of its customers' payment card information, but that Target was alerted that is point of sale systems might have been compromised by credit card processors who had noticed a surge in fraudulent transactions involving credit card that had been used at Target.

43.     After Target became aware of the compromise of its customers' payment cards' it did not begin to immediately notify these persons, the story of the breach was reported by the media.

44.     More than likely, on information and belief, Target did not promptly notify the public about the data breach as it knew that it would loose considerable sales during the holiday season and consumer confidence as it noted in its March 18, 2010, SEC filing.

45.     The compromise of personal information that occurred at Target, at a minimum, included the cardholder's name, credit or debit card number, and the card's expiration date and CVV.

46.     The compromise of such payment card information increases the hard to those persons whose payment cards' information was compromised.   Additionally, persons whose payment cards' information was compromised will need to expend time in which to either change their card numbers, cancel their cards, or vigilantly monitor their card statements and credit reports, or if such information is misused time and money to address the compromise.

47.     This information is stored on the magnetic strip of the card and is known as track data.

48.     Track 1 data typically contains the cardholder's name, account information including account number and expiration data, and other discretionary data.

49.     Track 2 data includes the full account number of the payment card along with a three digit card verification value.   It can also include an offset regarding a personal identification number of PIN.

50.     Track data can be used to make counterfeit credit cards.

51.     Because of the seriousness of a data breach involving Track 2 data, since early 1990s merchants have not been permitted to retain and store Track 2 data after a payment card transaction.  This requirement applies even if the merchant encrypts the Track 2 data.

52.     The compromise of payment card account information places those persons who information was compromised at a exponentially higher likelihood of having their credit card information misused than the general public.

53.     Connecticut's state's attorney general, George Jepsen, has publically stated that the breach raises questions about the effectiveness of Target's measures to protect the confidentiality and security of private information it receives from its customers.

54.     Massachusetts Attorney General Martha Coakley's office has publically stated that her office is talking to Target about the breach and how the company is addressing it, and plans to work with other Attorneys General to determine whether the company had proper safeguards in place.

55.     Target in regard to the data breach has stated:

> **Has the issue been resolved?**
> Yes, Target moved swiftly to address this issue so guests can shop with confidence. We have identified and resolved the issue of unauthorized access to payment card data. The issue occurred between Nov. 27 and Dec. 15 and guests should continue to monitor their accounts.

56.     Target has publically stated that due to the breach that occurred at Target, class members will now need to take time out of their daily lives and to "monitor their accounts" and those who place a freeze on their credits with any credit reporting agency to protect themselves from unauthorized accounts being opened in their name may need to pay $5 to have the freeze lifted to obtain additional credit.  Additionally, freezing a consumer's credit report may result in a delay of that consumer's ability to obtain financing.

57.     As such, Target's "Yes" answer to whether "Has the issue been resolved" is not entirely accurate, and is deceptive as it will require cardholders to take affirmative action to change their account numbers, PIN, monitor their credit reports, and make other adjustments such as having to change their card account information on any autopay accounts of a card whose number they changed.

58.     On information and belief, Target did not notify individual cardholders whose payment cards were compromised until after 9:00 p.m. local time on December 20, 2013.

59.     On information and belief, Target maintains a database with contains personal identifying information of customers, which may include a customer's address, either physical and/or email.

60.     As a result of the data breach, JPMorgan Chase and Co reduced the daily spending and cash withdraw limits of those debit card holders who made a purchase at Target during the class time period.

61.     Plaintiffs and all class members are subjected to expending time to cancel their accounts, monitor their accounts and credit report for years.

62.     Target has not been forthcoming on whether debit card PINs have been placed at risk due to the data breach.

63.     On information and belief, as of the filing of this brief, Target has not implemented a policy to check the identification of any person using a credit card who makes a purchase under $50 to verify whether the person using the payment card is the person authorized to use the payment card.

64.     "A chip card is a standard-size credit card plastic with both an embedded chip and a traditional magnetic stripe. If your card is lost or stolen, the embedded microchip makes the card extremely difficult to counterfeit or copy. You'll enjoy greater acceptance in over 130 countries around the world including Canada, Mexico and the United Kingdom, where chip cards are standard." https://www.bankofamerica.com/credit-cards/chip-and-signature-faq.go

65.     The chip and PIN system is designed to make it more difficult for criminals to cash in on credit card fraud. The magnetic strip system used in the United States only requires a

signature to authenticate a purchase. This allows criminals who get their hands on victims' credit cards to start making purchases immediately, potentially charging up thousands of dollars before the card is canceled.

66.     NBC Nightly News referred to the current credit payment card with a magnetic strip as "dates back to the Stone Age of Technology" and compared them to "old cassette tapes." http://www.nbcnews.com/video/nightly-news/53907035#53907035

## COUNT I
## BREACH OF IMPLIED CONTRACT

67.     Plaintiffs incorporate paragraphs 1-66 above herein.

68.     This Count is made against Target.

69.     Plaintiffs in conducting their respective payment card transactions with Target confided their private and confidential debit card and credit card information with Target in order to make purchases at Target, under which Target agreed to safeguard and protect such information,

70.     Plaintiffs and the class members would not have entrusted their private and confidential financial and personal information to Target in absence of such an implied contract with Defendants.

71.     Target breached the implied contracts they made with Plaintiffs and the class members by failing to safeguard such information.

72.     The damages sustained by Plaintiffs and class members were the direct and proximate result of Target's breaches of these implied contracts.

## COUNT II
## ILLINOIS PERSONAL INFORMATION PROTECTION ACT &
## ILLINOIS CONSUMER FRUAD ACT

73.     Plaintiffs incorporate paragraphs 1-66 herein.

74.     This count is brought against Target on behalf of Plaintiff Erjona Vasquez, Krishnan, Eduardo Vasquez and all persons with an Illinois address who shop used their credit or debit card at a Target Store in Illinois during November 27, 2013 and December 15, 2013.

75.     At all times relevant hereto, there was in full force and effect the Illinois Personal Information Protection Act (IPIPA), 815 ILCS 530/1, providing that any data collector that owns or licenses personal information concerning a state resident shall notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach.

76.     Target is a "data collector" within the meaning of the IPIPA 815 ILCS 530/5.

77.     Target possessed Plaintiffs' and the class members' "personal information" within the meaning of the IPIPA 815 ILCS 530/5.

78.     The compromise of payment card information constitutes a "breach of the security of the system data" or "breach" within the meaning of the IPIPA 815 ILCS 530/5.

79.     Target had a duty to disclose in the most expedient time possible and without unreasonable delay that a breach of the personal information occurred.

80.     Under 815 ILCS 530/10(a) Target in part was after a beach notify Illinois residents "in the most expedient time possible and without unreasonable delay[.]"

81.     Target failed to disclose in the most expedient time possible and without unreasonable delay that payment cardholders' personal information was compromised.

82.     At this time it is unknown whether the cost to provide individual notice to each Illinois resident who was effected by the breach is in excess of $500,000.

83.     Target's link is in black and white, lowercase letters and in a font smaller that the bright and vivid advertising that draws the readers attention to the center of the webpage, which

also downloads a split second after the colorful advertisements are displayed, thus causing a reasonable web user to scroll down just enough to miss the link completely, does not comport with the Act's conspicuous posting requirement on Target's website.

84.    There is no excuse for Target delaying disclosure until after the public media disclosed the story of the data breach.  There is no excuse in waiting until the night of December 20, 2013, to begin emailing REDCard (Target's branded credit card) holders of the data breach.

85.    A violation of Section 20 of the IPIPA constitute an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1.

86.    Target's conduct complained of was inexcusable and reckless indifference towards the rights of others.

87.    Plaintiffs and the class members were injured by Target's failure to properly implement adequate, commercially reasonable security measures to protect their private financial payment card information while shopping at Target.

88.    Target's conduct was both unfair and/or deceptive acts and practices, in violation of 815 505/2, by:

   a.    Failing to properly implement adequate, commercially reasonable security measures to protect its customers' private financial information.  Such actions for failing to maintain proper data security can enforced by the FTC under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). *E.g. Federal Trade Commission v. Wyndham Worldwide Corp.*, No. CV 12-1365-PHX-PRG (D. Ariz.);

   b.    Fail to warn shoppers that their information was at risk as a result of Target's failure to properly implement such measures; and

c. Failing to immediately notify affected customers of the nature and extent of the security breach.

## COUNT III
## VIOLATION OF MINN. STAT. § 325E.61

89.     Plaintiffs incorporate paragraphs 1-66 herein.

90.     This count is brought against Target by Plaintiff Lau and all persons with an Minnesota address who shop used their credit or debit card at a Target Store in Illinois during November 27, 2013 and December 15, 2013.

91.     Minn Stat. § 325E.61 requires that businesses in Minnesota "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of this state whose unencrypted person information was, or is reasonably believed to have been, acquired by an unauthorized person.  The disclosure must be made in the most expedient time possible and without unreasonable delay."

92.     At this time it is unknown whether the cost to provide individual notice to each Minnesota resident who was effected by the breach is in excess of $500,000.

93.     Target's notice of a link in black and white, lowercase letters and in a font smaller that the bright and vivid advertising that draws the readers attention to the center of the webpage, which also downloads a split second after the colorful advertisements are displayed, thus causing a reasonable web user to scroll down just enough to miss the link completely, does not comport with the Act's conspicuous posting requirement on Target's website.

94.     There is no excuse for Target delaying disclosure until after the public media disclosed the story of the data breach.  There is no excuse in waiting until the night of December 20, 2013, to begin emailing REDCard (Target's branded credit card) holders of the data beach.

95.     Target failed to disclose in the most expedient time possible and without unreasonable delay that payment cardholders' personal information was compromised.

96.     Plaintiff Lau's claim is under Minn. Stat § 8.31, Subd. 3a, and under the Private Attorney General Act permits consumers to pursue a private cause of action based upon violations of Minnesota law "respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade." Minn Stat. § 8.31, sub. 1, 3a.

## COUNT IV
## NEGLEGENCE

97.     Plaintiffs incorporate paragraphs 1-66 herein.

98.     This claim is against Target.

99.     Target was entrusted with Plaintiffs' and the class members' private payment card information for the sole purpose of transacting purchases for goods or services with Target.

100.    Target has a duty to exercise reasonable care in safeguarding and protecting its customers' payment card information.

101.    Target has a duty to exercise reasonable care in safeguarding and protecting its customers' payment card information from being compromised by unauthorized parties.

102.    Under Minnesota law, Target has a duty to promptly disclose the compromise of its customers' payment cards' information, including but not limited to account numbers.

103.    Target has a duty to promptly disclose the compromise of its customers' payment cards' information, including but not limited to account numbers.

104.    Target though its actions or omissions, unlawfully breached its duty to Plaintiffs and the class members by failing to protect their payment card information from being compromised by a third party or by its own employees.

105.    Target though its actions or omissions, unlawfully breached its duty to Plaintiffs and the class members by failing to adopt appropriate safeguards to prevent their payment card information from being compromised by a third party or its own employees.

106.    Target's breach of its duty owed to Plaintiffs and the class was the proximate cause of their damages.

## COUNT V – NEGLIGENCE PER SE

107.    Plaintiffs incorporate paragraphs 1-66 herein.

108.    This claim is against Target

109.    Under the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, Target had a duty to protect and keep sensitive personal information that it obtained from cardholders that conducted credit card and debit card transactions at Target secure, private and confidential.

110.    Target violated the Gramm-Leach-Bliley Act by not adequately safeguarding Plaintiffs' and the class members' sensitive personal information and failed to monitor, and ensure compliance with the PCI DSS, its contractual obligations and those accompanying rules and regulations to accept debit and credit cards, and to follow applicable state law designed to protect cardholder information.

111.    On information and belief, Target failed to comply the PCI DSS, its contractual obligations and those accompanying rules and regulations to accept debit and credit cards, and to follow applicable state law prohibiting the storage of unprotected sensitive personal information.

112.    Target's failure to comply with the PCI DSS, its contractual obligations and those accompanying rules and regulations to accept debit and credit cards, and to follow applicable state law constitutes negligence *per se*.

## COUNT VI
## DEFECTIVE PRODUCT

113.     Plaintiffs incorporate paragraphs 1-66 herein.

114.     This claim is against TD Bank.

115.     The REDCard issued by TD Bank is defective as it does not adequately protect against unauthorized duplication of the magnetic strip and the track information contained therein.

116.     Using a Chip and PIN card would eliminate the unauthorized duplication of credit and debit cards.

117.     "Over the last decade, most countries have moved toward using credit cards that carry information on embeddable microchips rather than magnetic strips. The additional encryption on so-called smart cards has made the kind of brazen data thefts suffered by Target almost impossible to pull off in most other countries. Because the U.S. is one of the few places yet to widely deploy such technology, the nation has increasingly become the focus of hackers seeking to steal such information. The stolen data can easily be turned into phony credit cards that are sold on black markets around the world." http://www.motherjones.com/kevin-drum/2013/12/heres-worst-part-target-data-breach

118.     TD Bank failed to issue the REDCard with a Chip and PIN.

119.     TD Bank's manufactured, controlled the manufacturing or caused to be manufactured, and distributed the REDcard to approximately to 8 million persons, (20%) of the approximately 40,000,000 (forty million) customers who information was compromised at Target.

## COUNT VII
## UNJUST ENRICHMENT

120.    Plaintiffs incorporate paragraphs 1-66 herein.

121.    The count is against Target.

122.    On information and belief, a portion of the proceeds from each sale at Target goes towards the expenses of Target's internal operations, including ensuring that Target's point of sale terminals and its payment system would not be compromised internally or externally.

123.    Plaintiffs and the class members paid monies for their purchases and that monies from those purchases went towards the expenses of Target's internal operations, including ensuring that Target's point of sale terminals and its payment system would not be compromised internally or externally.

124.    Target, did not provide the data security in exchange for the price Target's customers paid.

125.    Plaintiffs and the class members overpaid Target for security of their personal payment information that was not provided.

## CLASS ALLEGATIONS

126.    Target National Class:  All persons who used a debit or credit card at any Target store from November 27, 2013 to December 15, 2007, whose payment card information, including but not limited to the account number and expiration date, was compromised.

127.    TD Bank National Class: All persons who used a Target branded credit or debit card, commonly known as the REDCard, from November 27, 2013 to December 15, 2007, whose payment card information, including but not limited to the account number and expiration date, was compromised.

128.    Target Illinois Notice Class: All persons who used a debit or credit card at any Target store from November 27, 2013 to December 15, 2007, whose payment card information, including but not limited to the account number and expiration date, was compromised and whom Target failed to provide the required notice, including the timing of the notice, of the breach to.

129.    Target Minnesota Notice Class:  All persons who used a debit or credit card at any Target store from November 27, 2013 to December 15, 2007, whose payment card information, including but not limited to the account number and expiration date, was compromised and whom Target failed to provide the required notice, including the timing of the notice, of the breach to.

130.    Each class is so numerous that joinder of all individual members in one action would be impracticable.

131.    There are over 40 persons as defined by each of the class definitions above.

132.    Plaintiffs' claims are typical of the claims of the class members.

133.    Plaintiffs' claims are based on the same legal theory and arise from the same unlawful conduct.

134.    There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

    a.   Whether notice of the breach was adequately and timely provided; and

    b.   Whether Target is liable;

    c.   Whether the antiquated magnetic strips on credit and debit cards are inherently defective; and

    d.  Whether Target was unjustly enriched.

135.    Plaintiffs will fairly and adequately represent the class members.

136.    Plaintiffs have no interests that conflict with the interests of the class members.

137.    Plaintiffs have retained experienced counsel in class action consumer matters.

138.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible and the class members may not be aware that their rights have been violated.

139.    WHEREFORE, Plaintiffs, individually and on behalf of classes defined herein, requests this Honorable Court to enter judgment against Defendants:

    a.  For an appropriate amount of damages, including punitive damages;

    b.  Injunctive relief prohibiting TD Bank to issue REDcards with only a magnetic strip;

    c.  Injunctive relief to prevent further security breaches at Target and to protect cardholders by prohibiting Target from accepting any REDcards without a Chip and PIN;

    d.  Injunctive relief to prevent Target from failing to provide prompt notices of data breaches in the future;

    e.  Reasonable attorney's fees and costs; and

    f.  Any other relief that is deemed appropriate.

Respectfully submitted,

s/ Curtis C. Warner
    Curtis C. Warner

Curtis C. Warner
WARNER LAW FIRM, LLC
1400 E. Touhy Ave., Suite 260
Des Plaines, IL 60018

(847) 701-5290 (TEL)
cwarner@warnerlawllc.com

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims permitted by law.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner
WARNER LAW FIRM, LLC
1400 E. Touhy Ave.
Suite 260
Des Plaines, IL 60018
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com

## NOTICE OF LIEN AND ASSIGNMENT OF ATTORNEY'S FEES

PLEASE TAKE NOTICE that Plaintiffs have irrevocably assigned her rights to attorney's fees to their undersigned counsel who has taken a lien on such fees.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner
WARNER LAW FIRM, LLC
1400 E. Touhy Ave.
Suite 260
Des Plaines, IL 60018
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com